# United States District Court

for the

DISTRICT OF RHODE ISLAND

## <u>STATEMENT OF FACTS</u>
## For A Show Of Good Cause
## And Motion For Stay/Injunction

First, the Plaintiffs' are <u>not</u> attorneys.

On November 1,2006, plaintiffs' filed to appeal the District Court's denial of class certification.

On November 21,2006, Senior Magistrate Judge, Jacob Hagopian, entered a Memorandum and Order that Plaintiffs' provide Defendants' with a More Definite Statement.

Plaintiffs; did <u>not</u> receive this order from the Court. Forefeiting any right to appeal the Order. Plaintiffs' allege the United States mail was stolen by the opposition in order to gain this advantage.

Had plaintiffs' received the Order from the Court. They would have requested a stay in proceedings. The plaintiffs' believe the Appeal within the Court of Appeals did stay proceedings.

Plaintiffs' were just informed by another inmate on February 6,2007, that they should have requested a stay when the Appeal was filed, to avoid this complication.

On December 26,2006, plaintiffs' appeal for the Appointment of interam counsel to represent them was denied by the Court of Appeals

On January 4,2007, plaintiffs' filed Petitions with the Court of Appeals for a Panel Hearing/Rehearing En Banc. Plaintiffs' are awaiting status.

Since plaintiffs' remain within the Court of Appeals they submitt a Motion for Stay/Injunction Pending Appeal pursuant to Federal Rules of Appellate Procedure and First Circuit Local Rules, Rule 8(a). Plaintiffs' appolorize to the Court for this inconvenience.

Second, it looks quite promising that the ACLU may be formally intervening in litigation. It has been taking a long time for them to investigate, interview, and analize the issues, as this is a very complex matter for any attorney to handle. But it will be made clear to everybody which issues they expect to vigorously pursue.

Plaintiffs' further submit a Motion For Stay/Injunction pending the strong possibility of the ACLU providing legal representation.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

**EXECUTED ON:** 2-8-07
(SIGNATURE)

**PRINT NAME:** Michael J. Wheelock Sr.
**ADDRESS:** P.O.Box 8274
Cranstron, R.I. 02920

**EXECUTED ON:** 2, 7, 2007
(SIGNITURE)

**PRINT NAME:** Kenneth Wilson
**ADDRESS:** P.O. box 8274
Cranston, R.I. 02920

**EXECUTED ON:**
(SIGNATURE)

**PRINT NAME:** Luis Viveiros
**ADDRESS:** P.O. Box 8274
Cranston, R.I. 02920

**EXECUTED ON:** 2|8|07
(SIGNITURE)

**PRINT NAME:** Ernest Hazard
**ADDRESS:** P.O. Box 8274
Cranston, R.I. 02920

Subscribed and sworn to before me in CRANSTON in the County of Providence. In the State of Rhode Island and Providence Plantations. This 8th day of February A.D.2007.

Clerk/Notary Public

Date 2/8/07

Commission Expires: 6/23/09.

CERTIFICATION
[ 28 USCS § 1746 ]

I hereby certify that on the 8th day of February 2007. I sent a true copy of the within document by first-class postage pre-paid to:

United States Court of Appeals
for the First Circuit
Office of the Clerk,
Richard Cushing Donovan
John J. Moakley U.S. Courthouse
One Courthouse Way, Suite 2500
Boston, Massachusetts 02210

United States District Court
for the District of Rhode Island
Senior United States Magistrate
Judge, Jacob Hagopian
One Exchange Terrace
Providence, R.I. 02903

Attorney Generals Office
Michael W. Field, #5809
150 South Main Street
Providence, R.I. 02903

1. Plaintiffs' Petitions for Panel Hearing/Rehearing En Banc

# UNITED STATES COURT OF APPEALS

## FOR THE FIRST CIRCUIT

Case No. 06-2538

MICHAEL J. WHEELOCK SR.,
PLAINTIFFS'/APPELLANTS', et. al.

v.

STATE OF RHODE ISLAND,
DEFENDANTS'/APPELLEES', et. al.

COVER SHEET

1.] Plaintiffs'/Appellants' Petitions for Panel Hearing/Rehearing En Banc.

a.] Magistrate Judge, Jacob Hagopian's Report and Recommendation denying class certification.

b.] Civil Cover Sheet.

c.] Michael J. Wheelock Sr. v. State of Rhode Island, C.A. No. 00-144T.

d.] RIDOC Policy, #9.36-2.

e.] State of Rhode Island Commission For Human Rights -- Discrimination Case, #9.36-3.

2.] Plaintiffs'/Appellants' Appeal to the District Court's denial of class certification.

a.] Civil Cover Sheet.

b.] District Judge, William E. Smith's ORDER accepting the Magistrate Judge, Jacob Hagopian's Report and Recommendation.

Sincerely,

Plaintiffs'/Appellants', et. al.

# UNITED STATES COURT OF APPEALS

## FOR THE FIRST CIRCUIT

No. 06-2538

MICHAEL J. WHEELOCK SR.; ERNEST HAZARD; KENNETH E. WILSON; LOUIS VIVEIROS

Plaintiffs - Appellants

v.

STATE OF RHODE ISLAND DEPARTMENT OF CORRECTIONS; DONALD L. CARCIERI; ASHBEL T. WALL, II; ROBERT M. MCCUTCHEON; STATE OF RHODE ISLAND DEPARTMENT OF CORRECTIONS, Parole Board; LISA HOLLEY; RHODE ISLAND DEPARTMENT OF CORRECTIONS, Sex Offender Treatment Program; PETER LOSS; KIRK KASZYK; WILLIAM BEGONES; JOSEPH F. JANKOWSKI; RICHARD MEUNIER; WALTER DUFFY; LAWRENCE CERESI; SAMUEL DAVIES; MAURICE CHAMBERLAIN; CAROLYN RAMANO; RHODE ISLAND DEPARTMENT OF CORRECTIONS, Classification Board; ROBERT FLYNN

Defendants - Appellees

## PLAINTIFFS'/APPELLANTS' PETITIONS

## FOR PANEL HEARING/REHEARING EN BANC

Now comes the plaintiffs pursuant to Fed. R. Civ. P. and Loc. Rule 35 and 40 combining a Petition for a Panel Hearing and/or Rehearing En Banc.

This Honorable Court of Appeals denied plaintiffs' leave to appeal the District Court's Order denying them class certification before the plaintiffs were able to present the reason why they

brought this matter before this court.

Plaintiffs would have filed the leave to appeal and/or appeal themselves, but, did not believe they had a right to. See TITLE II. APPEAL FROM A JUDGEMENT OR ORDER OF A DISTRICT COURT, Fed. R. App. P. and 1st. Cir. Loc. R. 3 (c)(3),

> "In a class action, whether or not the class has been certified, the notice of appeal is sufficient if it names one person qualified to bring the appeal as representative of the class."

The Magistrate Judge, Jacob Hagopian cited several cases within his Report and Recommendation, which was also accepted by the District Judge, William E. Smith, that made the plaintiffs believe they had no legal right to present a Petition for Leave to Appeal and/or Appeal themselves without a (legal representative) to protect the interests of the other putative class members because the R&R stated they are not qualified to do so under Fed. R. Civ. P. RULE 23 (a)(4),

> "the representative party or parties will fairly and adequately protect the interests of the class."[1]

Plaintiffs only did what they were lead to believe was required pursuant to 1.) TITLE II. Appeal from a Judgement or Order of a District Court, Fed. R. App. P. and 1st Cir. Loc. RULE 3 (c)(3);

---

1. See attached R&R. "Individuals appearing pro-se may not adequately represent and protect the interests of the class ... require by Rule 23 (a)(4)."

2.) the District Court's R & R's reason for denying class certification; 3.) Fed. R. Civ. P. 23 ( 2003 Amendments, Subdivision (g), Paragraph (2)(A)) which,

> "Authorizes the court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."

So, plaintiffs" requested the Appointment of Interim Counsel to represent the putative class members and present the Appeal on behalf of all. But, before the plaintiffs' Motion for the Appointment of Interim Counsel was heard or the Appeal presented. Leave to Appeal was denied[2] under the standards articulated in Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 293-94 (1st Cir. 2000).[3]

Because Interim Counsel and Leave to Appeal was DENIED. The

---

2. Plaintiffs assert that they followed the law "to a T." But because this Honorable Court of Appeals was unaware of the erroneous statement behind the District Court's denial of class certification. Plaintiffs have suffered prejudicial error based on a misunderstanding of the nature of the original proceeding. Plaintiffs will clarify what the specific issue is, that is being presented on appeal and hope this court will agree that they should be allowed to proceed under the above entitlement.

3. Plaintiffs' request to be excused from any rebuttal to this cite. Research in the prison's Law Library F.3d Series stops at 205 F.3d, No.1, April 10,2000. To aquire and research case law on this cite would take to much time to meet the deadline as well as being costly, 1.) you must fill out a request slip and send it to the Law Librian; 2.) you must pay five cents for every page; 3.) you must request the research you want on that case. (You end up paying five cents a page for cases that were not even needed because they don't pertain to the specific issue being researched. Since your unable to do the research on your own and only copy what you need, it becomes quite costly.

plaintiffs were never given an opportunity to apprise this court of the specific reason behind the appeal and the concrete evidence supporting that reason.[4]

Plaintiffs are appealing to this court, specifically, an erroneous assumption stated within the District Court's R&R. This was the only reason stated by the District Court for denying their Motion to Certify them as a Class.

In summary, the District Court stated, "plaintiffs apparently seek to represent the class (pro-se)."[5] That statement is refuted with concrete evidence[6] that they did not seek to represent anyone.

In this setting, an important decision turns on question of " fact " that is particularly crucial in the class certification process.

Plaintiffs' pursue this issue with the utmost respect for this Honorable Court of Appeals. In that this court will ensure that the erroneous assumption of a Magistrate Judge will not be

---

4. When a judge makes a ruling it is a matter in the record which may be challenged on appeal because, "(t)he fundamental requisite of due process of law is the opportunity to be heard," Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed. 2d 287, present evidence, and cross examine adverse witnesses. These rights are important in cases such as those that challenge purposed circumstances on incorrect or misleading factual premises.

5. See attached R&R. "Accordingly, I [Magistrate Judge, Jacob Hagopian] find that the plaintiffs cannot adequately protect the interests of those purported class members they seek to represent. I therefore recommend that plaintiffs' motion for class certification be denied."

6. See attached Civil Cover Sheet, Section SIGNATURE OF ATTORNEY OF RECORD, "Request for Court Appointed (ACLU)(?)"

overlooked, [as was done to Michael J. Wheelock Sr. back in 2002 on an issue involving his disability].[7]

Plaintiffs pray that this Honorable Court of Appeals will grant this petition and hear the attached appeal so that the appeal process is not unjustifiably delayed.

---

7. MICHAEL J. WHEELOCK SR. v. STATE OF RHODE ISLAND, et. al., C.A. No. 00-144T, United States District Court for the District of Rhode Island, OPINION BY: Magistrate Judge, Jacob Hagopian. I allege that Magistrate Judge, Jacob Hagopian acted prejudice towards me in that case and is acting prejudice towards the plaintiffs' in the instant case. Magistrate Judge, Jacob Hagopian is misrepresenting the facts of cases in order to conform to the rulings as he pleases. I have already explained within the FACT that is in dispute in the instant case. I will now explain what took place in case C.A. No. 00-144T. Section I. (B) Undisputed Facts.,

> "Plaintiff consented to being strip searched and placed in the area where the specimens are collected alone. However, four hours later, plaintiff still did not produce a urine sample."

This statement is not true. The whole basis for the action was to be afforded an accommodation such as Magistrate Judge, Jacob Hagopian stated for a FACT that it was afforded yet I still did not produce a urine sample. This changed the whole FACTUAL need to accommodate disabilities. To the contrary See Section II. Plaintiff's Motion for Contempt., Defendant's response to (A) Interrogatory Request #6; (B) Document Request #14; and, (C) Document Request #15. Which all state See "RIDOC" policy #9.36-2:"

In summary, there were no guidlines in policy #9.36-2 to ensure an inmate who could not provide a urine sample for drug testing, for whatever the reason, be afforded accommodating measures before imposing sanctions. See attached RIDOC policy #9.36-2.

I have recently proven that RIDOC policy #9.36-2 is discriminatory. See attached Discrimination case #07 RMD 039-02/02 filed on my behalf by the State of Rhode Island Commission For Human Rights and the new RIDOC policy #9.36-3 revised on the 10th of July 2006 to include an accommodation (the Dry Cell Procedure).

I further contend that Magistrate Judge, Jacob Hagopian denied me a Motion to amend case #144T under the "American With Disabilities Act of 1990" thus discriminating against me personally and allowing the discrimination to occur against me over the years.

Respectfully Submitted,

Michael J. Wheelock Sr.
Plaintiffs, et. al.
P.O. Box 8274
Cranston, R.I. 02920

Certification [ 28 USCS § 1746 ]

I hereby certify that on the 4th day of January 2007. I sent A true copy of the within document by means of first-class mail postage pre-paid to: Civil Appeals Management Program, One Courthouse Way, Suite 3440, Boston, Massachusetts 02210; U.S. Magistrate Judge, Jacob Hagopian, and U.S. District Judge, William E. Smith, U.S. District Court for the District of Rhode Island, One Exchange Terrace, Providence, R.I. 02903; and, Attorney Generals Office, Michael W. Field, # 5809, 150 South Main Street, Providence, R.I. 02903.

Michael J. Wheelock Sr.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**MICHAEL J. WHEELOCK,**
**et al.**

**v.** **C.A. No. 06 - 366 S**

**STATE OF RHODE ISLAND,**
**et al.**

**Report and Recommendation**

Jacob Hagopian, Senior United States Magistrate Judge

Michael J. Wheelock, Ernest Hazard, Kenneth Wilson, and Louis Viveiros (collectively "plaintiffs"), inmates legally incarcerated at the Rhode Island Department of Corrections ("RIDOC"), Adult Correctional Institutions, filed suit under 42 U.S.C. § 1983. Plaintiffs name as defendants numerous individuals employed or affiliated with the RI DOC.

Currently before the Court is the motion of the plaintiffs for the certification of a class pursuant to Fed. R. Civ. P. 23. The defendants have not been served in this matter, and accordingly, have not filed an objection. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that the plaintiffs' motion for class certification be denied.

**Discussion**

Rule 23(a) of the Federal Rules of Civil Procedure requires that parties seeking class certification demonstrate: (1) the class is so numerous that joinder of all parties is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of those of the class; and (4) the representative party or parties will fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Individuals appearing *pro se* may not

Case 1:06-cv-00366-S-JH Document 16 Filed 05/01/2006 Page 2 of 3

adequately represent and protect the interests of a class. See Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000)(holding that class representatives cannot appear *pro se*); McGrew v. Texas Bd. of Pardons & Paroles, 47 F.3d 158, 162 (5th Cir. 1995) (stating that "because [the plaintiff] is proceeding *pro se* and his own complaint failed to state a cause of action, his ability to serve as an adequate representative of the class is dubious"); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (denying certification of a class with a *pro se* representative because "the competence of a layman representing himself [is] clearly too limited to allow him to risk the rights of others"); Avery v. Powell, 695 F. Supp. 632, 643 (D.N.H. 1988) (denying class certification because "[a] pro se plaintiff may not possess the knowledge and experience necessary to protect the interests of the class as required by Rule 23(a)(4)").

Here, plaintiffs are not attorneys. Plaintiffs are *pro se* and apparently seek to represent the proposed- undefined class *pro se*. Accordingly, I find that the plaintiffs cannot adequately protect the interests of those purported class members they seek to represent. I therefore recommend that plaintiffs' motion for class certification be denied.

**Conclusion**

For the reasons stated above, I recommend that plaintiffs' motion for class certification be denied. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed.R.Civ.P. 72(b); Local Rule 32. Failure to file timely, specific objections to the report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986)(per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
August 31, 2006

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Michael J. Wheelock Sr. et.al.

(b) County of Residence of First Listed Plaintiff: Providence
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

**DEFENDANTS**
State of Rhode Island, Rhode Island Department of Corrections, et.al.

County of Residence of First Listed Defendant: Providence
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | XX | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | XX 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- XX 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

XX 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 42 USCA 1983
Brief description of cause: Inadequacy of Rehabilitation, Retaliation, etc.

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ yes (?)
CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ____ DOCKET NUMBER ____

DATE: August 4, 2006
SIGNATURE OF ATTORNEY OF RECORD: Request for Court Appointed (ACLU)(?)

FOR OFFICE USE ONLY

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

**MICHAEL J. WHEELOCK, Sr., v. STATE OF RHODE ISLAND, et al.**

**C.A. No. 00 - 144 T**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

*2002 U.S. Dist. LEXIS 8630*

**April 8, 2002, Decided**

**DISPOSITION:** [*1] Magistrate judge recommended that plaintiff's motion for summary judgment be denied, defendants Wall, Fortin, Whitman, Hilterman, Ashton and Lapointe's motion for summary judgment be granted, and plaintiff's motion for contempt be denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** Michael J. Wheelock SR, Plaintiff or Petitioner, Pro se.

For Defendant or Respondent: Patricia Anne Coyne - Fague, EsQ.

**JUDGES:** Jacob Hagopian, United States Magistrate Judge.

**OPINIONBY:** Jacob Hagopian

**OPINION:**

**Report and Recommendation**

Jacob Hagopian, United States Magistrate Judge

Michael J. Wheelock, Sr., *pro se*, filed a Complaint pursuant to *42 U.S.C. § 1983* alleging a violation of his Fourth Amendment rights. Plaintiff claims that the drug testing conducted at the Adult Correctional Institution, Cranston, Rhode Island, is an unreasonable infringement on his Fourth Amendment rights. Secondly, and separately, he contends that the manner in which the drug tests were conducted violated his Fourth Amendment rights. Plaintiff names as defendants the State of Rhode Island, the Rhode Island Attorney General's Office, the Rhode Island Department of Corrections("RIDOC"), A.T. Wall, Ann J. Fortin, Anne Spaulding, Marilyn Price, Walter [*2] Whitman, Roy Hilterman, Lt. Alves, Lt. Lapointe, Lt. McCaffery, and Leo Ashton.

The matter is currently before the Court on the following motions: (1) Plaintiff Michael Wheelock's motion for summary judgement; (2) defendants Wall, Fortin, Whitman, Hilterman, Ashton and Lapointe's motion for summary judgement, and (3) Plaintiff Wheelock's motion for contempt. For the reasons that follow, I recommend that plaintiff's motion for summary judgement be denied, defendants' motion for summary judgement be granted, and plaintiff's motion for contempt be denied.

**I. Summary Judgement Motions**

**A. Summary Judgment Standard**

Summary judgement's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc., 895 F.2d 46, 47 (1st Cir. 1990)*. Summary judgement can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56*. Summary judgement should be granted [*3] "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the ultimate burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*.

**B. Undisputed Facts**

Here, the undisputed facts are as follows:

Plaintiff Michael J. Wheelock, Sr., is an inmate incarcerated at the Adult Correctional Institution ("ACI"), Cranston, Rhode Island. On August 21, 1999, the plaintiff was chosen randomly to produce a urine sample for drug testing purposes. Plaintiff was directed to the prison hospital where he had to stand in line, awaiting the drug test. While waiting his turn to provide a sample, plaintiff

observed inmates in front of him producing samples and two correctional officers observing the procedures.

When it was the plaintiff's turn, he was order to stand over a 55-gallon garbage barrel, with a correctional officer on the opposite side, observing. While he was attempting to produce, other inmates were standing behind him, observing him from behind. The second correctional officer was located in the collection area. [*4] Plaintiff was unable to produce a urine sample.

After his inability to produce a urine sample, plaintiff was taken to a holding cell. Plaintiff attempted periodically to produce a urine sample, but he could not. Plaintiff asked to see a doctor, for more time, for water, and for a different test. His requests were not met. Since he did not produce a urine sample, plaintiff was placed in segregation and charged with a refusal to produce a urine sample, which carries the same consequences as a positive test result. Accordingly, plaintiff received disciplinary sanctions.

On December 15, 1999, plaintiff was again chosen randomly to produce a urine sample for drug testing purposes. Again, plaintiff could not so produce. Plaintiff consented to being strip - searched and placed in the area where the specimens are collected alone. However, four hours later, plaintiff still did not produce a urine sample. Plaintiff requested more time, more water, or a different test. His requests were denied, and he was charged with a disciplinary infraction for not producing a urine sample. He thereafter received sanctions.

### C. *42 U.S.C. § 1983*

Plaintiff has brought suit under [*5] *42 U.S.C. § 1983* alleging a violation of his Fourth Amendment rights. Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

*42 U.S.C. § 1983.*

In order to maintain a section 1983 action, the conduct complained must be committed by a "person" acting under color of state law and the conduct must have deprived the plaintiff of a constitutional right or a federal statutory right. *Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923, 64 L. Ed. 2d 572 (1980)*; see also, *Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)* (constitutional deprivations); *Maine v. Thiboutot, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980)* [*6] (statutory deprivations). Here, there is no dispute that the named defendants acted under the color of state law. However, the defendants assert that the undisputed facts demonstrate that plaintiff's Fourth Amendment rights were not violated. I agree.

### D. The Fourth Amendment

#### 1. Drug Testing Policies at the ACI.

Plaintiff contends that the drug testing policy at the ACI violates the Fourth Amendment in three respects. First, plaintiff contends that the drugs tests violate the Fourth Amendment because advance notice is not given to an inmate, and that inmates are selected randomly. Second, plaintiff contends that treating a failure to produce a urine sample as a positive test result is unreasonable. Lastly, plaintiff contends that the ACI should provided alternatives to urine drug testing. I reject his contentions.

The Fourth Amendment to the U.S. Constitution provides that individuals have the right to be free from the government's "unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment protects expectations of privacy. *Winston v. Lee, 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d 662(1985).* Though some diminution in privacy is to [*7] be expected in prison, see *Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)*, courts have held that inmates retain a constitutional right to bodily privacy. See *Hayes v. Marriott, 70 F.3d 1144 (10th Cir. 1995), Canedy v. Boardman, 16 F.3d 183 (7th Cir. 1994); Sepulveda v. Ramierz, 967 F.2d 1413 (9th Cir. 1992)*

A drug test constitutes a search for purposes of the Fourth Amendment and must be conducted in a reasonable manner. See *Spence v. Farrier, 807 F.2d 753, 755 (8th Cir. 1986).* In determining whether a search of a prisoner is reasonable, the court must "[balance] the significant and legitimate security interests of the institution against the privacy interests of the [prisoner], *Bell v. Wolfish, 441 U.S. 520, 560, 99 S. Ct. 1861, 1885, 60 L. Ed. 2d 447 (1979)*, and give prison administrators wide ranging deference in [their] adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security." *Id. at 547.*

The unauthorized use of narcotics [*8] in a prison by inmates poses a serious threat to prison officials' ability to maintain institutional security. Cf. *Block v. Rutherford, 468 U.S. 576, 588-89, 104 S. Ct. 3227, 82 L. Ed. 2d 438(1984)*(indicating that the unauthorized use of drugs is a problem in many penal institutions). Accordingly, prison officials have a significant and legitimate interest in preventing unauthorized drug use among inmates. This Court has already found that urinalysis drug testing of prisoners at the ACI is a reasonable means of combating the unauthorized use of drugs, and does not violate the Fourth Amendment. See *Miller v. Moran, 1992 U.S. Dist. LEXIS 7586, 1992 WL 119131 (D.R.I. 1992).* I see no reason to alter this holding, and decline to do so today.

The fact that the test is given without advance notice and that inmates are selected randomly is of no moment. The random and unannounced testing of inmates is reasonable. *Lucero v. Gunter, 17 F.3d 1347, 1350 (7th Cir. 1994);* See also *Spence v. Farrier, 807 F.2d 753, 755 (8th Cir. 1986).* If drug tests were performed on a schedule, with notice of those selected in advance, the ability to detect drugs would be [*9] reduced, if not eliminated, thus frustrating the purpose of the testing.

Moreover, the policy of the ACI to treat those who do not produce a urine sample in a timely manner, here, after a four hour period, as testing positive for drug use, does not separately implicate plaintiff's Fourth Amendment rights. Once the search is deemed not to infringe upon the Fourth Amendment, the result for not submitting to the search - here timely producing the urine sample-does not further implicate the Fourth Amendment. Assuming *arguendo* that it did, treating the failure to produce a urine sample as a positive test for drugs is not an unreasonable policy. The prison has significant and legitimate interest in ensuring that inmates produce a urine sample. Without adverse consequence for not producing, there would be no incentive for inmates to comply with the drug testing program.

Lastly, Plaintiff contends that the ACI's policy of not providing alternatives to a urine testing, for example, a blood test, violates the Fourth Amendment. As I have already determined, the search, here, the urine drug testing, is a reasonable search. The ACI is under no obligation under the Fourth Amendment to provide [*10] drug testing alternatives to inmates.

Accordingly, no Fourth Amendment violation has been demonstrated with respect to the drug testing policies at the ACI. Thus, plaintiff's motion for summary judgement should be denied, and defendants' motion for summary judgement should be granted. I so recommend.

**2. The Manner in Which the Tests were Conducted on Plaintiff Wheelock.**

Plaintiff Wheelock next complains that the manner in which he was tested violated the Fourth Amendment. The undisputed facts demonstrate that the plaintiff had to stand in a line with other inmates. When it was plaintiff's turn to produce a urine sample, he was required to stand over a 55-gallon barrel. A correctional officer stood opposite the plaintiff to observe the collection procedure. Another correctional officer was also present in the collection room. Inmates stood in line, behind the plaintiff. The inmates had a view of the back of Wheelock while he attempted to produce a urine sample.

Here, there is no evidence that there were members of the opposite sex viewing plaintiff's attempted urination, and nor could other inmates directly see his attempts. See *Thompson v. Souza, 111 F.3d 694, 703 (9th Cir. 1997).* [*11] The presence of the two correctional officers, one directly viewing plaintiff's attempts and the other in the collection area, was reasonable to safeguard the integrity of the tests and to maintain control over the inmates. See id. Thus, the manner in which his tests were conducted was reasonable, and no violation of the Fourth Amendment occurred.

Accordingly, since the undisputed facts demonstrate that no violation of the Fourth Amendment occurred, plaintiff's motion for summary judgement should be denied, and defendant's motion for summary judgement should be granted. I so recommend.

**II. Plaintiff's Motion for Contempt.**

Plaintiff has filed with this Court a motion for contempt, due to the defendants' alleged failure to comply with an order of this Court, which granted Plaintiff's motion to compel discovery. In the instant motion, plaintiff contends that the Order was violated with respect to five requests. The requests and the defendants' responses are set forth below:

> **(A) Interrogatory Request # 6, propounded on defendant Wall.** If an inmate was experiencing "stage fright" during the process of trying to produce a urine for urinalysis what safeguards [*12] are set up to ensure a drug free inmate is not punished?
>
> Defendant's response: See answer to Question 4. [The response to Question 4 provided: Objection. Pursuant to a Report and Recommendation issued by the Court, Magistrate [Judge] n1 Hagopian, on May 15, 2001, Plaintiff's claims with regard to the disciplinary process and his disciplinary confinement were dismissed. The only remaining claim is Plaintiff's claim with regard to the 4th Amendment. This

request does not relate to the 4th Amendment claim made by Plaintiff.]

Defendant's further response, as ordered by the Court: Pursuant to RIDOC Policy # 9.36-2, effective August 31, 1998, in the event an inmate cannot produce a [urine] specimen at the moment the officer asks for one, the inmate will be given a four hour period in which to produce a specimen. During this period, the inmate is secured in an area where access to toilet facilities can be controlled. Drinking water is made available in an amount not to exceed eight (8) ounces.

**(B) Document Request 14.** Any and all information on how the RIDOC deals with an inmate who finds himself unable to urinate in the view of the collecting officer.

Defendants' [*13] Response: Objection. Pursuant to a Report and Recommendation issued by the Court, Magistrate [Judge] Hagopian, on May 15, 2001, all of Plaintiff's claims, except those that concern the 4th amendment, were dismissed. This request does not relate to the 4th amendment claim made by Plaintiff.

Defendants' Further Response as Ordered by the Court: Produced: RIDOC Policy # 9.36-2, effective August 31, 1998, which provides that in the event an inmate cannot produce a [urine] specimen at the moment the officer asks for one, the inmate will be given a four hour period in which to produce a specimen. During this period, the inmate is secured in an area where access to toilet facilities can be controlled. Drinking water is made available in an amount not to exceed eight (8) ounces.

**(C) Document Request 15:** Any and all information on how the RIDOC deals with an inmate, who, with the medical condition of anxiety, cannot produce a urine for urinalysis.

Defendants' Response: Objection. Pursuant to a Report and Recommendation issued by the Court, Magistrate [Judge] Hagopian, on May 15, 2001, all of Plaintiff's claims, except those that concern the 4th amendment, were dismissed. [*14] This request does not relate to the 4th amendment claim made by Plaintiff.

Defendants' Further Response as Ordered by the Court: Produced: RIDOC policy # 9.36-2, effective August 31, 1998, which provides that in the event an inmate cannot produce a [urine] specimen at the moment the officer asks for one, the inmate will be given a four hour period in which to produce a specimen. During this period, the inmate is secured in an area where access to toilet facilities can be controlled. Drinking water is made available in an amount not to exceed eight (8) ounces.

**(D) Inspection Request 1.** Complete audio recordings of the disciplinary hearings on 8-25-99 and 12-17-99.

Defendants' Response: Objection. Pursuant to a Report and Recommendation issued by the Court, Magistrate [Judge] Hagopian, on May 15, 2001, Plaintiff's claims with regard to the disciplinary process and his disciplinary confinement were dismissed. The only remaining claim is Plaintiff's claim with regard to the 4th Amendment. This request does not relate to the 4th Amendment claim made by Plaintiff.

Defendants' Further Response as Ordered by the Court: The Department of Corrections prohibits Maximum [*15] security inmates from possessing cassette tapes. They are considered to be contraband, as cassette players are prohibited. Therefore, in lieu of providing the actual [tapes], counsel for the defendant submits that she will work with the Deputy Warden of the Maximum security facility to set up a time for plaintiff to listen to the tapes under supervision. n2

**(E) Additional Request # 1.** Copies of all urinalysis log records from August 21, 1999 to present, that pertain to Michael Wheelock, Sr., # 074124, which state the time and the testing procedure started and the actual time the specimen was given.

Defendants' Response: No response given by RIDOC.

Defendants' Further Response: Wheelock did not give a specimen. Because no

specimen was given, there was no "chain of custody" log created. Therefore, the disciplinary report written by the officer is the only record of the fact that the request was made four hours prior to Mr. Wheelock being booked for a refusal. According to the officer's report, the testing procedure started at 4:00 p.m. Wheelock still had not provided a sample at 8:15 p.m., according to the officer's report. The report has been provided in response [*16] to [another discovery request].

n1 The Court draws defense counsel's attention to Pub.L. 101-650, 104 Stat. 5089 (1990). There, Congress abolished the magistrate and created the magistrate judge. See Pub.L. 101-650, 104 Stat. 5089 (1990). Thus, the proper title when referring to this writer is "magistrate judge."

n2 The Court notes that the Plaintiff has listened to the tapes on one occasion. Plaintiff has been given the opportunity to listen to them as many times as he desires. See Defendants' Memorandum in Opposition to Plaintiff's Motion for Contempt, at 2 - 3.

Here, Defendants properly provided further answers to plaintiff's requests and have permitted the plaintiff to listen to the disciplinary tapes. Thus, they have substantially complied with the Court's Order. Accordingly, plaintiff's motion for contempt should be denied. I so recommend.

## Conclusion

Accordingly, for the reasons stated above, I recommend that plaintiff's motion for summary judgement be denied, defendants Wall, [*17] Fortin, Whitman, Hilterman, Ashton and Lapointe's motion for summary judgement be granted, and plaintiff's motion for contempt be denied. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. *Fed.R.Civ.P. 72(b)*; Local Rule 32. Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986)*(per curiam); *Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).*

Jacob Hagopian
United States Magistrate Judge
April 8, 2002

# RHODE ISLAND DEPARTMENT OF CORRECTIONS
## POLICY AND PROCEDURE

| | | | |
|---|---|---|---|
| | POLICY NUMBER: 9.36-2 DOC | EFFECTIVE DATE: 08/31/98 | PAGE 1 OF 18 |
| | REPEALS: 9.36-1 DOC | DIRECTOR: | |
| | SUPPLEMENTS: 9.36-2 PBP | | |
| SECTION: SECURITY AND CONTROL | | SUBJECT: SUBSTANCE ABUSE TESTING, SANCTIONS, AND TREATMENT FOR INMATES UNDER RIDOC SUPERVISION | |
| REFERENCES: RIDOC policy #'s 15.11-1 DOC, "C" Category Inmates; 11.01-2 DOC, Code of Inmate Discipline; 15.01-1, Classification Process; 10.07.01, Community Confinement Program; Morris v. Travisono, 499 F. Supp. 149 (1980); 9.36-2 PBP, Substance Abuse Testing, Sanctions and Treatment of Parolees | | AUTHORITY: Rhode Island General Laws (RIGL) 42-56-10 (v), Powers of the Director; 42-56-24, Time allowed for good behavior; Violent Offender Incarceration and Truth in Sentencing Incentive Grant Program (PL 104-208, 110 STAT. 3009, H.R. 3610) | |

I. PURPOSE:

To specify the conditions and procedures for conducting drug testing, sanctions, and interventions of inmates under supervision of the Rhode Island Department of Corrections (RIDOC).

II. POLICY:

A. All adult offenders, male and female, while incarcerated or sentenced under the jurisdiction of the RIDOC are subject to drug testing.

B. Inmates are subject to drug testing at any time.

Inmate for Urinalysis Form, Attachment 1, section entitled "Other/Comments".)

e. Testing of Inmates in Treatment:

(1) All inmates participating in the Department's substance abuse treatment programs are subject to urinalysis testing.

(2) Inmates in substance abuse treatment programs are tested weekly for a 6-month period and at least twice (2) monthly thereafter until successful completion of the treatment program.

(3) Treatment programs include individual counseling, group counseling, education sessions, and intensive residential treatment.

(4) Inmates are also subject to random substance abuse testing.

(5) Inmates are also subject to testing for cause (reasonable suspicion exists that inmate is under influence of drugs and/or alcohol).

2. Collection of Samples:

a. A Superior Officer or designee identifies an area and/or individual(s) to be tested using the criteria set forth above. The Correctional Officer ("Collecting Officer") observes proper procedures in collecting the urine sample(s) to insure the integrity and validity of the results.

b. The Collecting Officer thoroughly searches the inmate(s) before collecting the specimen(s) to insure the absence of hidden containers or other contraband that may negate a valid test. The Collecting Officer uses a label on the collection container for identification purposes.

c. The Collecting Officer informs the inmate that if s/he cannot produce a specimen at that moment, s/he will be given a 4-hour period in which to produce a specimen. During this period, the inmate is secured in an area where access to toilet facilities can be controlled. Drinking water is made available in an amount not to exceed eight (8) ounces. An inmate's failure to provide a specimen within this time limit is considered a failure to provide

a specimen, and disciplinary action is taken. The Discipline Board treats a failure as equal to a dirty urine.

d. The Collecting Officer requires the inmate to wash and dry his/her hands immediately before providing the specimen.

e. The specimen is collected in an area which affords the inmate privacy. However, the Collecting Officer (who is of the same sex as the inmate) witnesses the actual passage of the specimen into the container.

f. Depending on the facility, one of two methods is followed to code the urine specimen:

(1) If the <u>Collecting Officer</u> codes the urine specimen:

(a) The Collecting Officer receiving the urine container from the inmate labels it with a predetermined code number obtained from the facility's Urine Screen Coordinator. This code number is assigned to a specimen to prevent the tester from identifying the inmate. The coding system is devised as follows:

The facility identifier [see (2) (b) below], the year in two digits, a 4-digit number starting at 0000, running consecutively. Example: 1940001 (1 = High Security; 94 = Year; 0001 = Specimen Number). The 4-digit numbers return to 0000 with each new year.

(b) The Collecting Officer initiates the Selection of Inmate for Urinalysis Form (Attachment 1) showing to whom the specimen belongs, the date and time collected, and by whom.

If the inmate indicates s/he is currently taking medication, the type of medication is listed on Selection of Inmate for Urinalysis Form, Attachment 1 (see #10).

(c) Finally, the Collecting Officer notes the code number assigned to the specimen in the upper right hand corner of Attachment 1.

AUG 1 8 2006

STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS
CHARGE OF DISCRIMINATION FORM

RICHR

**1. COMPLAINANT**

CASE NO. 07 RMD 039-02/02

Mr. Michael J. Wheelock, Sr.
(Mr. Mrs. Ms.)

Home Telephone Number

John J. Moran Medium Security Facility
Street Address

Work Telephone Number

Cranston, RI 02920
City, State and Zip Code

County

**2.** Respondent
State of Rhode Island/ DEPARTMENT OF CORRECTIONS/ A.T. Wall, Jake Gadsen, Michael T. Poshkus and Frederick Friedman
Name

(401) 462-1000
Telephone Number

40 Howard Avenue
Street Address

**TYPE OF CHARGE**

Cranston, RI 02920
City, State, and Zip Code

___Public Accommodations

___Credit ___42-87

___Other

**3. CAUSE OF DISCRIMINATION**

___Race ___Color ___Religion ___Sex ___Ancestral Origin ___Sexual Orientation

___Age (18 & above) ___Marital Status (Credit Only) _X_ Disability _X_ Retaliation

___Other (Specify) ______

**4. DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE**
October 1, 2005 and continuing

1. I am being denied equal services, including denial of reasonable accommodation by the State of Rhode Island/Department of Corrections, A. T. Wall, Jake Gadsen, Michael T. Poshkus and Frederick Friedman. I have been an inmate at the respondent's medium security facility since on or about February 15, 1999.

2. Respondent maintains that witnessed urine samples must be provided for drug testing purposes as the reason for the discriminatory treatment I am being forced to endure.

3. I believe I have been discriminated against on the basis of my disability (Shy Bowel Syndrome) in that I am being treated less favorably than similarly situated, non-disabled inmates. On or about October 4, 2005, I was officially diagnosed with Shy Bowel Syndrome by John P. Wincze, Ph.D. My disability is a mental disorder which physically prevents me from urinating in front of others. Dr. Wincze recommended the accommodation of having "drug screenings include a private urination sampling to allow participation in the drug treatment program," which I requested on or about October 6, 2005. The respondent refuses to grant me the accommodation and continues to force me to take extreme measures to meet their requirement. I must painfully retain water for unreasonably long periods of time or drink extreme ~~quantities of water in order to provide~~ a urine sample with a witness present. I was unjustly terminated from the Correctional Rehabilitation Academy (CRA) when I filed a complaint regarding this issue. I was consequently sanctioned a total of 50-days segregation, lost 60 days good-time credit and was unable to earn a paycheck and 2-days-a-month industrial good-time credits. These actions are in violation of applicable state law.

I swear or affirm that I have read the above Charge and that it is true to the best of my Knowledge, Information and belief.

[signature] 8-15-06
Signature of Complainant Date

Subscribed and Sworn to Before me this Date:

15th August 2006
Day Month Year

[signature]
Signature of Notary Public

# RHODE ISLAND DEPARTMENT OF CORRECTIONS POLICY AND PROCEDURE

| | | | |
|---|---|---|---|
| [Seal: State of Rhode Island and Providence Plantations, Department of Corrections, 1972] | POLICY NUMBER: 9.36-3 DOC | EFFECTIVE DATE: 07/10/06 | PAGE 1 OF 28 |
| | REPEALS: 9.36-2 DOC | DIRECTOR: [signature] | |
| | SUPPLEMENTS: 9.36-3 PBP | | |
| SECTION: SECURITY AND CONTROL | | SUBJECT: SUBSTANCE ABUSE TREATMENT, TESTING, AND SANCTIONS FOR INMATES UNDER RIDOC SUPERVISION | |
| AUTHORITY: Rhode Island General Laws (RIGL) § 42-56-10(22), Powers of the director | | | |
| REFERENCES: RIDOC policy #'s 4.03-1 DOC, Orientation and Entrance-Level Training for Non-Correctional Officers; 15.11-1 DOC, "C" Category Inmates; 11.01-4 DOC, Code of Inmate Discipline; 15.01-2 DOC, Classification Process; 10.07.01, Community Confinement Program; 18.59-2 DOC, Confidentiality of Medical Information; 9.36-2 PBP, Substance Abuse Treatment, Testing, and Sanctions of Parolees; 18.07-1 DOC, Communication on Special Needs Patients; <u>McLean v. Vose</u> C.A. 92-0464B (1994); <u>Miller v. Moran</u> 1992 WL 119131 (D.R.I. 1992); <u>Wheelock v. R.I.</u> 2002 U.S. Dist. LEXIS 8630 (D.R.I. 2002) | | | |
| OFFENDER ACCESS THROUGH LAW LIBRARY? | | X YES | |
| SPANISH TRANSLATION? | | X YES | |

I. <u>PURPOSE:</u>

To describe the conditions and procedures for offering substance abuse treatment interventions, conducting substance abuse testing, and imposing graduated sanctions to inmates while incarcerated by the Rhode Island Department of Corrections (RIDOC) in order to maintain institutional safety, security, and order.

(2) Inmates are required to wash and dry their hands immediately before providing the specimens.

(3) Specimens are collected in areas that afford privacy. However, the Collecting Officers must witness the actual passage of specimens into containers.

(4) If an inmate cannot immediately produce a specimen, s/he is given a 4-hour period in which to produce a specimen.

(a) During this period, the inmate is secured in an area where access to toilet facilities may be controlled.

(b) Drinking water is made available to the inmate in an amount not to exceed eight (8) ounces.

(c) An inmate's inability to produce a specimen within this time limit is considered a failure to provide a specimen, and disciplinary action is initiated, consistent with policy 11.01-4 DOC, or a successive policy.

(d) However, if after being unable to produce a urinalysis sample, an inmate claims s/he is unable to provide a urinalysis sample during the 4-hour period due to a documented or undocumented mental health and/or a physical medical condition, the following guidelines apply:

(1) If the condition is reported by the inmate to be a mental health condition, the Collecting Officer shall proceed to follow procedures specified in item III.D.1.c.

(2) If the condition is reported to be a physical medical condition (e.g., obstructive uropathy or renal failure), the Collecting Officer shall follow procedures specified in item III.D.1.c.

(a) Upon receipt of the inmate's report of a physical medical condition, and after the use of a dry cell (whether a specimen is

produced or not), an appointment shall be immediately scheduled with the appropriate medical personnel to assess whether there is a physical medical condition preventing the inmate from providing a urine sample in a timely fashion;

(b) If, after consultation with the Department's medical personnel, Departmental staff are unable to document the inmate's physical medical condition that could prevent the inmate from providing a urine sample in the allotted time, the inmate shall be held to the normal standard of substance abuse testing for all future testing.

Any false claims by the inmate that s/he has a physical medical condition that prevents him or her from providing a urine sample may be grounds for disciplinary action in accordance with policy 11.01-4 DOC, or a successive policy.

(c) If, after consultation with the Department's medical personnel, the Departmental staff are able to confirm that the inmate has a physical medical condition that prevents the inmate from providing a urine sample in the allotted time, the inmate will be excluded from the current urinalysis collection event without discipline. In addition, the Department's medical personnel will consult with the facility Warden regarding the length of time such inmate should be excluded from future urinalysis collection attempts and the

inmate's housing status will be addressed so that his/her physical medical condition can be monitored (e.g., a housing transfer to a medical unit within the facilities).

c. Dry Cells

(1) Facility Wardens/designees may authorize the use of a dry cell when:

(a) inmates have <u>documented</u> physical and/or mental health conditions that prohibit the use of standard urinalysis or breathalyzer testing methods (e.g., obstructive uropathy or renal failure); or

(b) security needs require the use of this method.

<u>Note</u>: A "dry cell" is a secured cell that contains no running water, toilet, or urinal. It is inaccessible to other inmates. The inmate being tested is strip-searched and left in the cell wearing only undergarments. S/he is given the specimen cup and instructed to tell the Collecting Officer when s/he has provided the sample. Said inmate is videotaped while s/he is in the dry cell. The inmate is given eight (8) hours to produce the sample, and the Collecting Officer does not observe the sample pass into the collection cup; however, the process is videotaped.

(2) Inmates' <u>undocumented</u> claims of physical and/or mental health conditions that prohibit the use of standard urinalysis or breathalyzer testing methods require verification.

(a) The inmate must sign an Authorization to Request/Release Health Care Information form (Attachment 1).

(b) The Collecting Officer consults RIDOC Health Care Services staff to verify the inmate's claim, immediately if possible.

If immediate verification is not possible, the Collecting Officer ensures the inmate is in a secure location and requests authorization from the Warden/designee to utilize a dry cell.

(3) Each unsubstantiated claim of a physical and/or mental health condition that precludes the use of standard testing methods will be treated independently. Authorization for a single incident of the use of a dry cell will not automatically apply to subsequent testing.

2. Random Testing

a. On the first day of each month, RIDOC's computerized SATS automatically generates facility-specific random lists of inmates to be tested during that month.

(1) These random lists contain inmate names totaling 10 percent of each facility's inmate population (at the time the list was generated).

(2) RIDOC's Urine Screen Coordinator and facility Collection Officers may access these lists via:

(a) computer terminals containing the substance abuse testing application; and/or

(b) PDAs assigned to each facility, the K-9 Team, and Community Confinement Program.

b. Ideally, Collection Officers, working in conjunction with the Urine Screen Coordinators or designees (usually Superior Officers), attempt to collect specimens from all inmates on the random lists each month. If, for any reason, an inmate is unavailable for testing by the end of the month (e.g., s/he has been discharged or hospitalized), the