UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICHAEL J. WHEELOCK, Sr. :
Plaintiffs', et.al. :
:
V. : CA No. 06-366S
:
STATE OF RHODE ISLAND :
Defendants' et.al. :

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR A MORE DEFINITE STATEMENT.

Now comes the Plaintiffs' in response to the Defendants' Motion For A More Definite Statement pursuant to Rule 12(e) of Civil Procedure.

1) Factural basis for each plaintiffs' claim.
2) The legal claim asserted.
3) Which claims are lodged against which defendants'.
4) Exhaustion of remedies.

SEE ATTACHED MORE DEFINITE STATEMENT

Respectfully Submited

[signature]

Kenneth Wilson #110276
Plaintiffs', et.al.
Adult Corrections Inst.
Medium Security
P.O. Box 8274
Cranston, R.I. 02920

**1. Factual Basis for each plaintiffs' claim.**

(1) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to circumvent the law and plaintiffs' right to receive counseling from specially trained personnel, is unlawful.

(2) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to circumvent the law and manipulate it to use other inmates, in place of specially trained personnel, to render counseling to the plaintiffs'. Designating inmates as counselors when these inmates hold no medical training, degree, or license to act in this capacity is unlawful.

(3) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to circumvent the law and place other inmates in positions of authority to supervise [police] the plaintiffs' is unlawful.

(4) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to circumvent the law to allow an inmate employee to provide assessments, evaluations, and recommendations regarding whether the plaintiffs' can or cannot be involved in the RIDOC SOTP, plaintiffs' parole report, if plaintiffs' have worked to that inmates satisfaction in order to receive three days a month meritorious good time credits offered for program participation, and overall treatment compliance is unlawful.

(5) Plaintiffs' allege that the employment and payment of inmates to perform the foregoing duties is unlawful.

(6) Plaintiffs' allege that these employees' are also

receiving special privileges such as top tier cells, three days a month meritorious good time credits, two days a month industrial good time credits, and much more is unlawful.

(7) Plaintiffs' allege that <u>no</u> other inmates within the RIDOC is offered the special privilege of earning three days a month meritorious good time credits, every month, for the full term of their sentence is unlawful.

(8) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to circumvent the law, and plaintiffs' right to confidentiality from inmate employees of the RIDOC SOTP is unlawful.

(9) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to circumvent the law, and plaintiffs' right to independent medical treatment of plaintiffs' choice is unlawful.

(10) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to circumvent the law, and to deny plaintiffs' right to seek a second opinion concerning medical treatment is unlawful.

(11) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to change medications prescribed by qualified medical personnel is unlawful.

(12) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP the right to access all medical records is unlawful.

(13) Plaintiffs' allege that if they do <u>not</u> sign the RIDOC SOTP "Treatment Agreement" [contract], and give the RIDOC SOTP

consent to circumvent and manipulate the law plaintiffs' will receive no rehabilitation is unlawful.

(14) Plaintiffs' allege that if they do not sign the RIDOC SOTP "Treatment Agreement" [contract], and give the RIDOC SOTP consent to circumvent and manipulate the law plaintiffs' status changes from eligible to be considered for parole to, inelegible to be considered for parole is unlawful.

(15) Plaintiffs' allege that the RIDOC SOTP should, but does not provide individualized treatment for the plaintiffs' is unlawful.

(16) Plaintiffs' allege that the RIDOC SOTP intake process should, but does not, consist of a psychological evaluation of the plaintiffs' to differentiate, and provide treatment accordingly is unlawful.

(17) Plaintiffs' allege that the RIDOC SOTP is profiling all sex offenders as having the same sexual offense, and providing only overall group treatment is counter productive towards rehabilitation and is unlawful.

(18) Plaintiffs' allege that the signing of the RIDOC SOTP "Treatment Agreement" [contract], gives the RIDOC SOTP consent to control several aspects of the plaintiffs' life after prison is unlawful.

(19) Plaintiffs' allege that the RIDOC SOTP is operated by one (1) social worker who administer's treatment to seventy two (72) inmates that live in a dorm, like setting. One (1) social worker cannot provide the plaintiffs' with treatment required of several qualified medical personnel is unlawful.

(20) Plaintiffs' allege that this one (1) RIDOC SOTP social worker is under qualified, and not licensed to practice psychology according to the plaintiffs' need is unlawful.

(21) Plaintiffs' allege that Court ordered sex offender treatment is not being honored by the RIDOC SOTP, and is unlawful.

(22) Plaintiffs' allege that the Classification Board is not fulfilling their requirements to provide rehabilitation to the plaintiffs' is unlawful.

(23) Plaintiffs' allege that the Parole Board has predetermined to grant parole to only those offenders successfully involved in the RIDOC SOTP is unlawful.

(24) Plaintiffs' allege that the RIDOC SOTP does not provide the plaintiffs' with a hearing before suspensions from the RIDOC SOTP is unlawful.

(25) Plaintiffs' allege that the RIDOC SOTP does not provide the plaintiffs' with a hearing before termination from the RIDOC SOTP is unlawful.

(26) Plaintiffs' allege that the RIDOC SOTP does not provide the plaintiffs' a hearing before denial of treatment from the RIDOC SOTP is unlawful.

(27) Plaintiffs' have not received any answer to any of the grievances mentioned within Plaintiff Wheelocks Additional Factual Basis For Plaintiff Wheelocks Claims ONLY.

Rhode Island General Laws; but not limited to, any and all applicable rules; statues; authorities; consent decree judgements; and remedies.

Jurisdiction is conferred upon this Court and Venue is laid in the United States Federal District Court for the District of Rhode Island.

Plaintiff, et.al., on behalf of themselves and all others similarly situated are pro-se. **Haines V. Kerner**, 30 L.Ed.2d., 653, (1972), **-pro-se complaint**, 1. The United States Supreme Court holds allegations of a pro-se complaint to less stringent standards than formal pleadings drafted by lawyers, should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

**Factual Basis For Plaintiff Wheelock's Claims Only**

See original complaint, pages 27 through 54.

**Additional Factual Basis For Plaintiff Wheelock's Claims Only**

(1) Wheelock alleges on August 1,2006, he mailed a letter to the Commission For Human Rights by means of certified mail, but was lost within the prisons mail system.

(2) Wheelock alleges on August 5,2006, Officer Chamberlain refused to allow him into the law library as he sat watching TV on the TV he rolls out of the educational room.

Wheelock asked if he was sure he wanted to do this, again. Chamberlain told him to get the f--k out. Wheelock has filed complaints, but they fall upon deaf ears.

As Wheelock is back in the cell writing down this, he feels the need to speak with his psyciatrist in order to relieve his anxiety.

(3) Wheelock alleges on August 7,2006, Captain Vitale called him to speak about the complaint he filed against Officer Chaimberlain and Lieutenant Duffy on March 12,2006. Capt. Vitale construed the complaint to fit his cause(protect the Brotherhood). Wheelock was told that he was simply paranoid, and that would be in his report.

This, so called, investigation was conducted with the door wide open. When Wheelock exited the room, there were about five others outside the door who were listening(nothing was confidential).

Wheelock also informed Capt. Vitale that there were WITNESSES to the complaints. Capt. Vitale refused to call WITNESSES.

(4) Wheelock alleges on August 9,2006, Psychologist, Chuck Dawson tried to coerce him into enrolling back into the RIDOC SOTP, by inticing Wheelock with, "Peter Loss could help him get visitation," something that I was and has been pursuing for years.

(5) Wheelock alleges on August 10,2006, at 8:15am., Officer Chamberlain was telling another Officer, while looking directly at me, "he thinks he's a tough guy."

(6) Wheelock alleges on August 11,2006, he wrote to Warden Boyd about the response he received from Capt. Vitale's, so called, investigation. Wheelock asked for him to look into it personally.

(7) Wheelock alleges on August 28,2006, at 2:15pm., legal mail was handed to me already opened out of my presence by Officer Monterio.

(8) Wheelock alleges on August 29,2006, at 11:33am., he spoke to Warden Boyd while Capt. Vitale was standing right next to him. I asked Warden Boyd about Vitale refusing to call WITNESSES at the so called investigation, and the opening/misplacement of his legal mail.

Warden Boyd told him to write to him about it.

(9) Wheelock alleges on September 8,2006, at 12:00pm., he was handed an envelope containing legal mail from the District Court which was dated September 1,2006. When he told the mail officer, Lepore that his mail was late. Lepore laughed.

(10) Wheelock alleges on September 9,2006, at 2:20pm., Officer Mancini handed him an envelope from the sheriff's office already opened out of his presence and stapled shut. Wheelock immediately brought this matter to the attention of Officer Mancini.

(11) Wheelock alleges on September 14,2006, at 9:45 am., defendant Lt. Flynn called him to Shift Command, and questioned him about the complaint he filed against him in the United States District Court.

(12) Wheelock alleges on September 15, 2006, Lt Meunier and officer Chamberlain questioned plaintiffs' about complaint's filed in the United States District Court against them.

(13) Wheelock alleges on September 30, 2006, at 2:00 pm., he was handed an envelope by the Block Officer (?) from the United States District Court open and never closed.

(14) Wheelock alleges on October 11, 2006, at 12:30 pm., he was called to the industry control by Officer Lepore. He refused to give Wheelock his legal mail from the Attorney Generals Office and Governor Carcieri, Officer Lepore said "he was sending them back due to improper U.S. Postal Procedures according to RIDOC policy".

(15) Wheelock alleges on October 31, 2006, at 1:55 pm., Lt. Flynn tore up his grievance that was previously filed about notary, Kerri Skwirz, refusing to Notarize Documents, Lt. Flynn said, "to refile the grievances if he wanted:",

Lt. Flynn refused to accept Wheelocks grievances about the Officers closing the law library on weekends to watch Football and Movies.

Approximately, ten (10) minutes later Lt. Flynn called Wheelock back to his office Lt. Flynn stated, "The only reason i'm going to take these grievances is to see how this plays out", and then sat back in his chair and laughed.

When Officer Melikian found out about the grievances he began calling Wheelock a F--king ripper rat because he couldn't watch television on the weekend anymore.

Officer Melikian also drew a cartoon, and left it on the corner of his dest for every one to see. It stated, "he hhad just added another person to his list of people he hates".

(16) Wheelock alleges on November 5, 2006, Officer Chamberlain called him over to his desk. Officer Chamberlain said, "He wanted to go toe-to-toe with Wheelock because he was a F--king ripper rat". Officer Chamberlain then yelled "That he has no problem with killing a F--king childmolester".

(17) Wheelock alleges on November 6, 2006, at 9:00 am., Officer Chamberlain lunged at him in order to hit him Lt. Jankowski jumped in front of Officer Chamberlain to restrain Officer Chamberlain from striking him.

(18) Wheelock alleges on November 13, 2006 at 11:20 am., inmate Paul Hill took an orange off his food tray. Officer Melikian took Wheelocks ID., badge and told him he was booked. Officer Melikian then took the orange out of inmates Hill's hand, but did not book him.

As Wheelock ate, Officer Melikian stood about five feet in front of him clapping like crazy, and saying out loud to himself, "I got that F--king ripper rat".

(19) Wheelock alleges on November 14, 2006, at 9:00am., Chairperson of the Discipline Board, Lt Meunier, gave Wheelock the option of pleading guilty, and not being reprimanded, or having inmate Paul Hill booked as well. Wheelock is in no position to consent to the booking of another inmate. So, since he was not going to be reprimanded he pled guilty.

Wheelock later found that because he pled guilty, he could not receive the ten days good time credits for that month.

At lunch, Officer Melikian ordered Wheelock to sit alone while he stood on the other side of the table coughing and talking over his food tray, calling him, "A F--king ripper rat". Officer Melikian said, "Sit there and don't say a word or he'll embarrass the F--k out of him in front of everyone".

(20) Wheelock alleges on November 15, 2006, at breakfast, Officer Melikian ordered him to sit in front of him again, alone. Wheelock was not going to go through this every day, so he threw his food away.

Wheelock walked aver and told Capt. Vitale what Officer Melikian was making him do, Capt. Vitale said, "Sit where the F--k Melikian tells you, and get the F--k away from me".

(21) Wheelock alleges on November 21, 2006, at 11:30 am., Officer Monterio told him that Warden Boyd wanted to see him when lunch was called.

Wheelock approached Warden Boyd who took him aside, and said, "If he doesn't stop trying to set up his officers. There will be a drastic change in his classification status".

(22) Wheelock alleges on November 21, 2006, Plaintiffs' did not receive the District Court's Order for a More Definite Statement.

(23) Wheelock alleges on November 23, 2006, at 11:15 am., he went to eat the Special Thanks Given dinner. Officer Melikian came over to dinning room one to bring him over to dinning room two where there was nobody else, and told him to sit alone in front of him or throw my food away. I did not eat.

Capt. Vitale witnessed Officer Melikian's actions and smiled at Wheelock on his way out of the dinning room.

Wheelock has not eaten breakfast or lunch since Officer Melikian began tormenting him on November 14, 2006.

(24) Wheelock alleges on December 7, 2006, he was booked by Officer Sivo and Officer Lepore because he went to get legal mail which he believes he was called for this is retaliation by the brotherhood.

(25) Wheelock alleges on December 19, 2006, Lt Meunier,

Kerri Skwirz, and another Officer (?) found him guilty. Wheelock received 6-days loss of priviledges, 6-days loss of good time, and unable to earn ten (10) days good time for that month. This was done in retaliation. Appeal was also mailed out this date, received back denied.

(26) Wheelock alleges on January 17,2007, all plaintiffs' filed a level I grievance concerning inmates delivering counseling to other inmates within the RIDOC SOTP, and being paid by the RIDOC to do so.

(27) Wheelock alleges on January 18, 2007, Mail Officer Lepore faked opening an envelope from the Public Defenders Office. This envelope had already been opened; on the end and he just opened it length wise.

(28) Wheelock alleges on January 24, 2007, he was handed legal mail by the Block Officer, and from the ACLU already opened out of his presence.

(29) Wheelock alleges on January 31, 2007; he filed a grievance concerning the physical law library does not contain basic research material going back seven (7) years from now. If he needs to conduct research concerning the last seven (7) years he must pay $0.05 per page to do so, totaly inadequate.

(30) Wheelock alleges on February 1, 2007, Plaintiff Wilson filed a level I grievance concerning the inability to adequately research and litigate due to the lack of basic meaningful research materials are not available to all plaintiffs' for the last seven (7) years.

(31) Wheelock alleges on February 10, 2007, at 7:30 pm., he handed Lt. Vicino a request slip about how he has become the recipient/victim of Officer Melikian's personnal vandetta for filing a grievance about them watching television on the